UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ALAN E. LAGENDYK et al.,

        Plaintiffs,                            Case No. 1:07-cv-909

v.                                                  Honorable Janet T. Neff

MICHIGAN PAROLE BOARD et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiffs' complaint be dismissed for failure to state a claim.

**Discussion**

    I.        Factual allegations

Plaintiffs are currently incarcerated at Florence Crane Correctional Facility. According to their complaint, Plaintiffs are all convicted sex offenders who have served their respective minimum sentences. (Compl. at 8, docket #1.) Plaintiffs' action concerns the denial of parole by the Michigan Parole Board. Plaintiffs sue the Michigan Parole Board and the individual members John Rubitchun, Miguel Berrios, James Atterberry, Barbara Sampson, Enid Livingston, James Quinlan, Margie McNutt, William Slauther, George Lellis, Stephen DeBoer, Marianne Samper, Artina Hardman, and Charles E. Braddock.

Plaintiffs assert that since "the State has made parole available to them by way of statutory law and administrative policies...that the State cannot then arbitrarily or egregiously abrogate their own parole statutes and polices without violating procedural due process and substantive due process, protected by [t]he Fourteenth Amendment." (Compl. at 7-8.) Plaintiffs assert that they have continually been denied parole because of their status as "sex offenders" and such denial of parole failed to take into consideration Plaintiffs' conduct, participation in rehabilitative programs, ages and community support. (*Id.* at 11.) Plaintiffs further assert that any retroactive changes to Michigan's parole statutes since the Plaintiffs were convicted and sentenced violate the Ex Post Facto clause. (*Id.* at 17-19.) Plaintiffs Nash and Cavanaugh further allege that their constitutional rights were violated because they were given a parole score indicating a "high probability of parole" and the reasons given for denial of parole were not "substantial and compelling." (*Id.* at 21-23.)

Plaintiffs do not challenge the terms of their incarceration or seek monetary relief. Plaintiffs seek new hearings and "declaratory and injunctive relief sufficient to compel Defendants to comply with federal law by affording Plaintiffs fair, meaningful, and appropriate parole considerations" during their parole hearings. (*Id.* at 59-60.)

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005), the Supreme Court clarified that §1983 remains available to a state prisoner for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. *See also Thomas v. Eby,* 481 F.3d 434, 439-40 (6th Cir. 2007) (a plaintiff's challenge to parole procedures may proceed under § 1983 because it does not automatically imply a shorter sentence). Plaintiffs do not directly seek release from prison; rather, they seek new parole hearings. Because success in this action would not necessarily demonstrate the invalidity of Plaintiffs' continued confinement, his action does not appear to be *Heck*-barred. *See Wilkinson*, 544 U.S. at 82.

Assuming that Plaintiffs action is cognizable under § 1983, however, it fails to state a claim as set forth herein.

### A.      Immunity

Plaintiff has named the Michigan Parole Board as a separate Defendant distinct from its members. The Michigan Parole Board is part of the Michigan Department of Corrections. MICH. COMP. LAWS § 791.231a(1). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*,

440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, the Michigan Parole Board, as part of the Michigan Department of Corrections, is immune from injunctive and monetary relief. *See Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Carson v. Mich. Parole Bd.*, No. 88-1277, 1988 WL 79688, at *1 (6th Cir. July 27, 1988) (same).

### B. Procedural Due Process

Plaintiffs claim that Defendants violated their due process rights during the parole proceedings and in denying parole to Plaintiffs. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, __ F.3d __, 2007 WL 2768384, at *4 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that

Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Likewise, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Plaintiffs have no liberty interest in the parole proceedings; therefore, they fail to state a claim for a violation of their procedural due process rights.

To the extent Plaintiffs allege that Defendants relied on false information in denying their parole, Plaintiffs also fail to state a claim. Because Plaintiffs have no liberty interest in being paroled, they cannot show that the false information was relied upon to a constitutionally-significant

degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Therefore, Plaintiffs fail to state a claim for a violation of their due process rights arising from the denial of their parole.

Plaintiffs Nash and Cavanaugh make the separate assertion that Michigan gave them a liberty interest in parole because they are classified as having a "high probability of parole" and, therefore, must be given "substantial and compelling reasons" by the parole board if parole is denied. (Compl. at 21-23.) In *Carnes v. Engler*, No. 03-1212, 2003 WL 22177118 (6th Cir. Sept. 19, 2003), the plaintiff argued that the Michigan parole scheme created a liberty interest in parole because it places severe restrictions on the board's discretion to grant or deny parole, and because it requires the board to provide "substantial and compelling reasons" for departing from the parole guidelines. The Sixth Circuit rejected the plaintiff's arguments, holding that "the ultimate authority to grant

parole still lies with the discretion of the parole board." 2003 WL 22177118, at *1. Therefore, Plaintiffs Nash and Cavanaugh fail to state a due process claim.

### C. Substantive Due Process

Plaintiffs allege that they have been denied substantive due process by the arbitrary actions of Defendants in refusing to follow state law. Plaintiffs' substantive due process claim is without merit. Substantive due process "prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty, . . . ." *United States v. Salerno,* 481 U.S. 739, 746 (1987) (internal quotation marks and citations omitted). Although substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, religion, or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest, *see Block v. Potter*, 631 F.2d 233, 236 n.2 (3d Cir. 1980), Plaintiffs do not present any such allegations here. *See Mayrides v. Chaudhry*, 43 F. App'x 743, 746 (6th Cir. 2002) (considering substantive due process claim in context of parole). Moreover, it cannot be said that the actions of the parole board in continuing to deny Plaintiff's release on parole either shock the conscience or interfere with rights implicit in the concept of ordered liberty. Consequently, I recommend that Plaintiffs' substantive due process claim be dismissed for failure to state a claim.

### D. Equal Protection

Plaintiffs appear to also assert a claim that they have been treated differently because they are sex offenders. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend XIV; *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Equal

Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994). In addition, prisoners are not a suspect class. *Hadix*, 230 F.3d at 843; *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class). Specifically, convicted sex offenders are not a suspect class and, therefore, any laws or classifications that they may be subject to are reviewed under the rationale basis test. *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999).

Thus, in order to establish an equal protection violation, Petitioner must show that the Michigan scheme differentiates between similarly situated persons and is not rationally related to any conceivable legitimate legislative purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843. Under this standard,

>   the statute will be afforded a strong presumption of validity and must be upheld as long as "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643, 125 L. Ed. 2d 257 (1993). The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2098, 124 L. Ed. 2d 211 (1993). The legislature is not even required to articulate any purpose or rationale in support of its legislation. *See Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S. Ct. 2326, 2334, 120 L. Ed. 2d 1, (1992). Consequently, plaintiffs bear the heavy burden of "negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320, 113 S. Ct. at 2643.

*Hadix*, 230 F.3d at 843.

Plaintiffs' equal protection claim fails because the classification survives rational basis review.

>   [U]nder rational basis review, . . . the classification need not be the most narrowly tailored means available to achieve the desired end. . . . The statute need not be the best possible reaction to the perception, nor does the perception itself need to be heavily buttressed by evidentiary support. It is enough that the perceived problem is not obviously implausible and the solution is rationally suited to address that problem.

*Zehner*, 133 F.3d at 463 (rejecting prisoners' argument that 42 U.S.C. § 1997e(e) violates equal protection by limiting relief which may be sought by prisoners). Where there are "plausible reasons" for the legislature's action, a court's inquiry is at an end; "[i]t is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision[.]'" *U.S. R.R. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)). In addition, the Court's determination in this case must be made in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washington v. Harper*, 494

U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125-126 (1977).

"'The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime.'" *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of Michigan's parole statutes. *Hopkins v. Mich. Parole Bd.*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)). Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates"). In addition, Michigan's statutory scheme furthers the rights of victims, *see* MICH. COMP. LAWS § 780.771, which is also a legitimate and rational state purpose. *Johnson v. Rodriguez*, 110 F.3d 299, 307 n.11 (5th Cir. 1997) (reversing district court finding that Texas parole scheme violated prisoners' equal protection rights).

There are numerous factors and considerations used by the Michigan Parole Board in determining whether parole is appropriate. Consideration of the nature of particular offense of an inmate is a proper consideration. Additionally, Plaintiffs have failed to show that they have been denied parole while another inmate, similarly situated in all respects, was granted parole. Therefore, Plaintiffs' claim is insufficient to state a claim on which relief may be granted.

### E. Ex Post Facto

Plaintiffs contend that the 1992 Amendments to the parole guidelines violate the Constitution's Ex Post Facto Clause because they greatly reduced the number of "rehabilitated sex offenders confined in low security prisons" released on parole. (Compl. at 13.) Plaintiffs assert that the changes were made for the "explicit purpose of lengthening sentences." (*Id.*) Plaintiffs further assert that the 1994, 1998, 1999, 2002, and 2004 amendments to the parole guidelines also violated the Ex Post Facto Clause in the same manner. (*Id.* at 17.)

The Constitution's Ex Post Facto Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collings v. Youngblood*, 497 U.S. 37, 43 (1990). In *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the Ex Post Facto Clause. The Court declined to adopt an interpretation of the Clause that would "forbid[ ] any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court established a test inquiring whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A "sufficient risk of increased

punishment" involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n.3.

Although a prisoner's release on parole is discretionary with the Parole Board in Michigan, see Mich. Comp. Laws §§ 791.233e, 791.235, the Court in *Garner v. Jones*, 529 U.S. 244 (2000), observed that the "presence of discretion does not displace the protections of the Ex Post Facto Clause," as the "danger that legislatures might disfavor certain persons after the fact is present even in the parole context." *Id.* at 253. The Court further noted that, "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." *Id.* at 256 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (observing that the reasonableness of discretionary agency action can be gauged by reference to the agency's policies and practices)). The Court found that in deciding whether an administrative rule pertaining to Georgia's parole system violated the Ex Post Facto Clause, the lower court should have considered a policy statement where it was a "formal, published statement as to how the Board intends to enforce the Rule." *Id.* at 256-57. However, the Court explained that in the Ex Post Facto analysis, it was equally significant that,

> to the extent there inheres in ex post facto doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, ..., we can say with some assurance that where parole is concerned [,] discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Id.* at 253 (internal citations omitted).

It is clear that the controlling inquiry is whether the retroactive application of an amendment to a law or later enacted law or policy will create a sufficient risk of increasing the measure of punishment attached to a particular crime. *See id.* at 250; *Morales*, 514 U.S. at 509; *Michael v. Ghee*, __ F.3d __, No. 06-3595, 2007 WL 2287743, at *9-10 (6th Cir. Aug, 10, 2007). As previously noted, MICH. COMP. LAWS § 791.235[1] has listed a large number of statutory factors which are to be considered by the Michigan Parole Board. *See Sweeton v. Brown*, 27 F.3d, 1162, 1164 n.1 (6th Cir. 1994) (noting in 1994 that MICH. COMP. LAWS § 791.235 listed " a large number of factors to be taken into account by the board."). MICH. COMP. LAWS §§ 791.233e and 791.235 may have been amended to set forth a more detailed list of factors than former guidelines, but they are still nothing more than factors and guidelines to be considered by the board in assessing whether parole is appropriate. The Michigan Parole Board's consideration of the nature of Plaintiffs' conviction is well within its discretion both before and after any amendments since 1992. Additionally, all Plaintiffs are serving sentences stemming from either an original conviction or a parole violation, occurring after 1992. Plaintiff's allegations fail to suggest that the application of the current parole guidelines will create a significant risk of increasing the punishment attached to their respective offenses and, therefore, the claims are insufficient to implicate the Ex Post Facto Clause.

## Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C.

---

[1] MICH. COMP. LAWS § 791.235 was originally enacted in 1953, well before Plaintiffs committed the underlying offenses.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).


Dated:   November 14, 2007              /s/  Joseph G. Scoville
                                        United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).